**Wesley K. ROBERTS and the Bank of California, N. A., Executors of the Estate of William Roberts, Deceased,**

v.

**The UNITED STATES.**

**No. 58-53.**

United States Court of Claims.

March 6, 1957.

Frank L. Mechem, Seattle, Wash., for plaintiffs. George F. Kachlein, Jr., and Bogle, Bogle & Gates, Seattle, Wash., were on the briefs.

Elizabeth B. Davis, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Andrew D. Sharpe, Ellis N. Slack, and Leland T. Atherton, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

The plaintiffs sue to recover estate taxes and interest. They base their asserted right on section 7 of the Technical Changes Act of 1949, approved October 25, 1949, 63 Stat. 891, 894, which amended section 811(c) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811 (c). Section 7 resulted from the conclusion of Congress that, under the existing law, property was being included in the estate of decedents and taxed as such, when in fact the decedent had, at the time of his death, only the remotest possibility of ever becoming the owner of it. Section 7 said that property of which a decedent had, on or before October 7, 1949, made a transfer intended to take effect in possession or enjoyment on or after his death, should not be included in his gross estate unless the decedent had retained a reversionary interest in the property arising under the express terms of the instrument of transfer and not by operation of law, and the value of the interest exceeded 5 per cent of the value of the property. The section stated what was meant by the expression "reversionary interest".

. The plaintiffs' decedent had, on February 7, 1928, created an *inter vivos* trust for the benefit of his children. Before his death, which occurred on November 30, 1944, he had transferred to that trust securities which at the date of his death had a value of $348,633.13. The executors did not include this property in their estate tax return. The Commissioner of Internal Revenue on June 12, 1947 determined a deficiency, of which $108,-434.58 was attributable to his conclusion that the trust fund should have been included in the estate. His assigned reason for that conclusion was that the transfer of securities to the trust was made in contemplation of death and/or was intended to take effect in possession or enjoyment at the decedent's death, and, therefore, the securities were includible in the decedent's estate under section 811(c) of the Internal Revenue Code of 1939.

The plaintiffs' appealed the Commissioner's determination to the Tax Court, and the appeal was scheduled to be heard on May 17, 1948. Prior to this date there were discussions between representatives of the plaintiffs and of the Government for the purposes of developing the issues, preparing a stipulation of the facts and, if possible, settling the case. The issues were agreed to be (1) whether the transfers to the trust were made in contemplation of death and (2) whether, after the transfers to the trust there existed the possibility that the property might revert to the transferor by operation of law.

In the conferences, the plaintiffs submitted affidavits and information tending to show that the transfers were not made in contemplation of death. The Chief Counsel of the Technical Staff, representing the Government, said that in his opinion, if the reverter issue could be settled, there would be no problem on the contemplation of death issue.

As to the reverter issue, there were then pending in the Supreme Court of the United States two cases, later decided by that court and reported as Estate of Spiegel v. Commissioner of Internal Revenue, 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330, and Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 337, 93 L.Ed. 288. These cases involved the question whether a possibility of reverter arising only by operation of law made the property which was subject to the possibility taxable to the transferor-decedent. The United States Court of Appeals for the Ninth Circuit, 159 F.2d 257, had decided Spiegel adversely to the plaintiffs' position in their controversy with the Commissioner, and that was the court to which the plaintiffs' case would have gone on appeal by either party from the Tax Court. The plaintiffs were apprehensive of a decision by the Supreme Court adverse to their position and were anxious to effect a settlement before that had occurred. It may be noted that the Spiegel case was decided by the Supreme Court on January 17, 1949, adversely to the position of the plaintiffs in our case.

The plaintiffs offered $20,000 to settle the case, and the offer was accepted.

In the consideration of the offer, inside the Government's offices, the opinion was expressed in a memorandum that the relatively small offer of settlement should be accepted because the Government had no case on the reverter issue, because of its Treasury Regulations, but that it could not concede the contemplation of death issue. The plaintiffs were not aware of these thoughts of the Government's representatives, or at least one of them, who were dealing with the case.

A joint stipulation for settlement was presented to the Tax Court, which accepted it, and on May 25, 1948 entered judgment that there was a deficiency of $20,-000. The Tax Court gave no consideration to and made no mention of the merits of the respective contentions of the parties. The plaintiffs paid the deficiency, plus interest.

All of the above events occurred before the enactment of section 7 of the Technical Changes Act of 1949. That section was, as we have seen, made retroactive. The facts of the plaintiffs' case are concededly such that they would have entitled the plaintiffs to recover if a deficiency had been assessed against the estate on the sole ground that a possibility of reverter existed which caused the property to be includible in the estate, and they had paid the deficiency. They would likewise be entitled to the benefit of section 7 if the Tax Court had entered a judgment of deficiency based on that ground. The plaintiffs say that they are likewise entitled to recover in the instant case because, while two grounds were named in the deficiency notice, and considered in the negotiations for settlement, one of them, the contemplation of death issue, had no merit and really carried no weight in the settlement. The Government contends that the contemplation of death issue did have weight in arriving at the settlement, and urges that if it had any weight at all, the plaintiffs have no rights under section 7, even though the reverter issue was also a ground for the settlement.

The plaintiffs say that the contemplation of death issue had no weight in the settlement, apparently because they felt confident that the transfers to the trust were not made in contemplation of death, and that in litigation they could prevail on that issue, and because, in their conference with representatives of the Government, those representatives seemed to have no confidence in their side of that issue. However, the inter-office memorandum within the Government shows that at least one important official thought that contemplation of death was the Government's best issue.

The plaintiffs say that, because this memorandum was not disclosed to them they are not bound by it. Of course, they are not "bound" by it, but it is an historical fact which we should not disregard, if it tends to prove anything relevant to the case. And it does tend to prove why the Government compromised its claim for an asserted deficiency, but was not willing to concede it altogether. Its non-disclosure to the plaintiffs is of no significance. When a compromise of complicated issues is being negotiated, neither negotiator discloses, or is under any duty to disclose, the weight which he accords to his or his adversary's various contentions.

We think, then, that both issues had weight in the settlement. That brings us to the Government's contention that if the contemplation of death issue, which section 7 did not affect, entered into the settlement at all, then section 7 gives no right of recovery. It is argued that if the gift was made in contemplation of death, that made the property fully taxable, just as it would have been, under section 811(c) before it was amended by section 7, if it had created a situation from which a remote possibility of reverter by operation of law resulted.

It is true that if the case had been litigated in the Tax Court and the Tax Court had adjudged a deficiency on both grounds, the plaintiff would not be eligible for section 7 relief. In that case it would have been evident that a ground for taxation, sufficient in itself to make the property taxable, and which section

7 did not affect, was present. The presence of another ground which section 7 did affect would not have made the property retroactively nontaxable.

The fact the judgment entered was based on a settlement, rather than as a result of litigation, it seems to us, makes no difference. The amount agreed upon and paid was paid in settlement of both issues and it was accepted in settlement of both issues. The payor says he was willing to pay it all to settle the issue of reverter, being confident he could win the other issue of contemplation of death; the payee thought the reverter issue was worth nothing, but that he had a chance to win the contemplation of death issue. But the agreement for judgment mentioned neither issue; it was a settlement of both issues. If, after the payment, the defendant had sued on the contemplation of death issue, the plaintiffs could have successfully pled that the settlement was of both issues; and, so, when plaintiffs sue to recover on the theory that the settlement was of only the reverter issue, defendant properly replies that the payment was made in settlement of both issues.

■ It is not possible to allocate the payment in part to one issue and in part to another. The parties sharply differed in their valuations of the two issues. Their minds did not meet. What the plaintiffs paid to dispose of one issue was accepted by the defendant in settlement of the other. In such circumstances we cannot possibly allocate a part of the payment to one issue and a part to the other.

Plaintiffs are not entitled to recover. Their petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LITTLETON, Judge, concur.

MADDEN, Judge (dissenting).

I agree with the court that both issues had weight in the settlement. That brings me to the Government's contention that if the contemplation of death issue, which section 7 did not affect, entered into the settlement at all, then section 7 gives no right of recovery. It is argued that if the gift was made in contemplation of death, that made the property fully taxable, just as it would have been, under section 811(c) before it was amended by section 7, if it had created a situation from which a remote possibility of reverter by operation of law resulted. It is true that if the case had been litigated in the Tax Court and the Tax Court had adjudged a deficiency on both grounds, the plaintiff would not be eligible for section 7 relief. In that case it would have been evident that a ground for taxation, sufficient in itself to make the property taxable, and which section 7 did not affect, was present. The presence of another ground which section 7 did affect would not have made the property retroactively nontaxable.

But in the instant case we are dealing with a negotiated settlement, and it is evident that the reverter issue was, from the plaintiff's side, the predominant reason why they were willing to pay the tax, and that, from the Government's side, it was an important reason why it insisted that some tax be paid. Section 7 is a remedial statute, intended to relieve from taxes or refund taxes in cases where the tax is based upon the existence of a possibility of reverter. I have no doubt that the plaintiff paid, and was required to pay a considerable part of the tax in question because of the existence of a possibility of reverter. To the extent that he did so pay it, I think section 7 entitles him to relief. The determination of that extent is, of course, not a matter of accurate calculation from known data. It is only an estimate, arrived at on the basis of the evidence. I agree with our commissioner's estimate that $16,000 of the $20,000, and the interest on the $16,000, were paid because of the reverter issue.

The Government says that because the plaintiff resorted to the Tax Court, and that court rendered a judgment in the case, he cannot sue in this court for the refund of the taxes adjudicated by the Tax Court to be owing. That is, of course, the usual rule. But subsection

(c) of section 7, 26 U.S.C.A. § 811 note is specific that even if refund would otherwise be prevented by existing law, refund should nevertheless be made, except in two named situations not here relevant. The fact that the Tax Court had made a determination, exactly in accord with the Supreme Court's interpretation of section 811(c) before the enactment of section 7, would be no reason why the taxpayer who was required by that decision to pay a tax on a possibility of reverter should be treated differently from all other taxpayers, and denied the benefit of the retroactive change in the law.

I would give the plaintiff a judgment for $18,218.62, with interest as provided by law.

LARAMORE, Judge (dissenting).

I respectfully dissent for the reason that I believe the contemplation of death issue was conceded by the Government, after being furnished with the requested affidavits. Thereafter, that issue did not enter into the negotiations and was not a part of the stipulated judgment. Therefore, since the sole issue upon which the stipulation was based was the possibility of reverter, under the Technical Changes Act plaintiff should be entitled to recover.